Gladys **BODDIE**, Bertha Barker, Ann De Nicola, Maryann Dozier, Betty Ann Perez, Catherine Strain, Mary Wierzbicki, Mamie Williams, Mary Yeaton, and all other persons similarly situated, Plaintiffs,

v.

The **STATE OF CONNECTICUT**; Edward Horwitz, Clerk of the Superior Court of Connecticut for New Haven County; Judge Joseph S. Longo, Superior Court of Connecticut; Justice John P. Cotter, Court Administrator, Supreme Court of Connecticut, Defendants.

Civ. No. 12513.

United States District Court
D. Connecticut.

July 17, 1968.

Arthur B. LaFrance and Joseph M. Shortall, New Haven Legal Assistance Assn., Inc., New Haven, Conn., for plaintiffs.

Jack Greenberg, Leroy D. Clark and Philip G. Schrag, New York City, for plaintiffs.

Samuel W. Bowlby, New Haven, Conn., for New Haven Civil Liberties Counsel, amicus curiae.

Robert K. Killian, Atty. Gen., State of Connecticut, Raymond J. Cannon, and Edward J. Peters, Jr., Asst. Atty. Gen., Hartford, Conn., for defendants.

Before SMITH, Circuit Judge, and BLUMENFELD and CLARIE, District Judges.

## MEMORANDUM OF DECISION ON MOTION TO DISMISS

**J. JOSEPH SMITH, Circuit Judge.**

This case presents the question whether a state denies the equal protection of the laws guaranteed by the Fourteenth Amendment when it requires indigent persons seeking divorce to pay filing fees and costs which they are unable to pay before allowing them the access to the state courts which is necessary to obtaining a divorce.

The plaintiffs have brought this class action on behalf of those women in the State of Connecticut receiving welfare assistance from the State who wish to obtain divorce, but are allegedly barred from doing so by reason of their inability to pay the court fees and costs incident to a divorce proceeding. They seek a declaratory judgment that C.G.S.A. § 52–259 (as amended by Sec. 3, Public Act #628, 1967 Legislature), requiring payment of court fees, is unconstitutional as applied to the class they represent, and an injunction requiring the defendants to permit these plaintiffs (and other members of the class in future proceedings) to proceed with their divorce actions without payment of any fees and costs, and requiring the defendants to effect all necessary service and notice incident to the divorce actions without cost to the plaintiffs.

Plaintiffs rely upon 42 U.S.C. §§ 1981, 1983, and 1988 for a cause of action, upon 28 U.S.C. § 1343(3) for this court's jurisdiction, and upon 28 U.S.C. §§ 2201 and 2202 for the remedy of declaratory judgment and further relief based upon any declaratory judgment which might issue. Since plaintiffs seek an injunction restraining the enforcement of a State statute, a three-judge District Court has been convened. 28 U.S.C. §§ 2281, 2284.

The named defendants are the State of Connecticut; Edward Horwitz, Clerk of the Superior Court for New Haven County; Hon. Joseph S. Longo, a Judge of the Superior Court; and Hon. John P. Cotter, a Justice of the Connecticut Supreme Court and the Chief Court Administrator of Connecticut's judicial system. The plaintiffs allege in their complaint that on March 13, 1968 they applied to the Superior Court for New Haven County, asking that they be permitted to prosecute divorce proceedings without payment of filing or service fees, and submitting financial affidavits; that on March 14 the defendant Horwitz rejected the applications and accompanying papers on the ground that he could not accept them until an entry fee had been paid; and on April 2 the defendants Longo and Cotter declined to grant the applications or allow the papers to be filed. It is further alleged that court costs and expenses incident to a divorce proceeding are normally in excess of sixty dollars, the entry fee being forty-five dollars and the cost of service being ten to fifteen dollars by sheriff and one hundred dollars or more by publication, and that the plaintiffs are unable to pay the fees and costs. It is claimed that the State of Connecticut is denying the plaintiffs the equal protection of the laws by barring them from seeking a divorce because of their indigency, and is denying them due process of law by infringing their right to "petition the Government for a redress of grievances", U.S.Const. Am. I.

The defendants have moved to dismiss the complaint upon the following grounds: (1) the complaint does not draw into question the constitutionality of any state statute, and therefore it was improper to convene a three-judge court (although the motion papers do not request that the three-judge court be dismissed, we assume that it is that, and not dismissal of the complaint, which defendants request on the basis of this argument); (2) the notice provisions of 28 U.S.C. § 2284(2) have not been complied with; (3) the State of Connecticut may not be sued, and the individual defendants are immune from suit as judicial officers acting in a judicial capacity; and (4) failure to state a cause of action.

The first three issues raised by the defendants can be disposed of briefly.

(1) Defendants argue that since the general constitutionality of the Connecticut statute (C.G.S.A. § 52–259, as amended) is not questioned, plaintiffs only attacking the statute as it applies to indigents, there should be no three-judge panel in this case. They rely upon the language in Benoit v. Gardner, 351 F.2d 846, 848 (1 Cir. 1965), stating that no three-judge court is required where an injunction is sought on the ground that a valid statute is being executed in an unconstitutional manner. The argument misconceives the issue. Where an injunction is sought against enforcement of a state statute in a manner unquestionably expressive of the legislative intent, a three-judge court is required, even if the statute might be perfectly constitutional in some of its intended applications. As the Supreme Court succinctly put it in Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), "The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy." See also Evergreen Review, Inc. v. Cahn, 230 F. Supp. 498, 502 (E.D.N.Y.1964); and Poindexter v. Louisiana Financial Assistance Commission, 258 F.Supp. 158, 165 (E.D.La.1966). There is no question but that the Connecticut legislature intends the statute to apply to indigents as well as non-indigents; indeed, that is the thrust of the defendants' argument on the merits. The defendants have no discretion in the enforcement of the statute —as they point out, there is no statutory provision for the waiver of entry fees in a divorce action.

(2) 28 U.S.C. § 2284(2) provides, in relevant part: "If the action involves the enforcement, operation or execution of State statutes or State administrative orders, at least five days notice of the hearing shall be given to the governor and attorney general of the State." We find no merit in the argument in defendants' brief that this requirement has not been complied with, since the defendants were served, the attorney general entered an appearance, defendants' brief was filed *fourteen* days in advance of the hearing on the motion to dismiss, and no hearing has yet been set on the application for injunction.

(3) Plaintiffs concede that the State of Connecticut is not a proper party to this action. At the hearing on the motion the complaint was therefore dismissed as to the State. See, e. g., Serrano v. People of State of California, 361 F.2d 474 (9 Cir. 1966).

The argument that the individual defendants are immune from suit as judicial officers of the State of Connecticut acting in their judicial capacities is not sound. The defendant Horwitz is not a judicial officer. As to defendants Longo and Cotter, it is clear, of course, that judges are immune from liability for damages for actions taken in the exercise of the judicial function. Pierson v. Ray, 386 U.S. 547, 553–554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The rationale of the rule is that a judge should not have to fear litigation by those unsatisfied with his treatment of their cases. Although there is language in some of the cases stating the rule as one of absolute immunity from suit, we have found no cases applying the rule where it would absolutely bar an action for an injunction or mandamus against proposed actions beyond the powers of a judge.

Moreover, these defendants are acting in an administrative capacity in barring the plaintiffs from bringing their divorce actions without the payment of fees and costs. In short, they are entrusted with administration of the statute, a function quite different from the judicial function, exercised for example by Judge Healey of the Connecticut Superior Court in Davis v. Davis (unpublished opinion, in the file in this case), denying an application to proceed in forma pauperis in a divorce action upon a full consideration of the merits of the applicants' arguments.

If the defendants' argument were correct, a state could immunize any unconstitutional policy against the injunctive power of the federal courts by entrusting

its administration to an officer of its judicial branch. The proper defendant in a case such as this one is the state's agent in the implementation of the allegedly unconstitutional policy; and the defendants do not allege that any officer of the State of Connecticut other than themselves is entrusted with administration of the statute. Cf. Dorsey v. State Athletic Commission, 168 F.Supp. 149, 151 (E.D.La.1958), aff'd per curiam, 359 U.S. 533, 79 S.Ct. 1137, 3 L.Ed.2d 1028. See aslo Robichaud v. Ronan, 351 F.2d 533, 536–537 (9 Cir. 1965). The individual defendants are not immune from this suit.

(4) This brings us to the heart of the matter. May a state limit access to its civil courts and particularly in this instance, to its divorce courts, by the requirement of a filing fee or other fees which effectively bar persons on relief from commencing actions therein? [1]

■ Taking the factual allegations of the complaint as true, as we must on a motion to dismiss, 2A Moore's Fed.Prac. 2d ed. 1968, ¶ 12.08 n. 3, Clark v. Uebersee Finanz Korp., 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88 (1947), we must assume that these plaintiffs are effectively barred from bringing suit by the filing fee and other costs. We will assume further that the $45 filing fee alone is a sufficient bar in the case of some at least of the plaintiffs. Since anyone who pays the fees may at least file his complaint, it is plain that there is in effect a classification of prospective civil suitors between those able to afford the court costs and those unable to afford them.

Plaintiffs insist that such a classification, based solely on affluence (or poverty) is inadmissible as in violation of equal protection of the laws and due process. Plaintiffs argue with considerable force that access to the civil courts and particularly in domestic relations cases is a right of great importance, comparable to the right of freedom from imprisonment on unjust conviction of crime enforced in criminal and habeas corpus cases, so that its exercise may not be unequally restricted, under the teaching of, e. g., Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961), Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1962).

But there are, of course, differences between the right to freedom from capital punishment or imprisonment and the right of access to civil courts to adjudicate claims to money or property or adjust marital status.

We have not yet gone so far as to hold that no state services may be conditioned on payment of fees, cf. Harper v. Virginia Bd. of Elections, 383 U.S. 663, 668, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), so long as the fees are reasonably considered by the legislature to be required for legitimate state purposes. However, it may be noted that the dissent from the denial of certiorari in Williams v. Shaffer, 385 U.S. 1037, 87 S.Ct. 772, 17 L.Ed.2d 683 (1967) demonstrates that at least three members of the Supreme Court would bar requirement of such fees from the indigent, at least in eviction cases. As Mr. Justice Douglas has reminded us, speaking for the Court in Harper v. Virginia Bd. of Elections, supra, 383 U.S. at 669, 86 S.Ct. at 1082:

> We agree, of course, with Mr. Justice Holmes that the Due Process Clause of the Fourteenth Amendment "does not enact Mr. Herbert Spencer's Social Statics" (Lochner v. [State of] New York, 198 U.S. 45, 75, 25 S.Ct. 539, 546, 49 L.Ed. 937). Likewise, the Equal Protection Clause is not shackled to the political theory of a particular era. In determining what lines are unconstitutionally discriminatory, we

1. While the complaint herein may be defective in failing to show that any of the plaintiffs are eligible for divorce by residence and possession of non-frivolous grounds under Connecticut law, such deficiencies could be cured by amendment. In any case, the defendants' attack is directed primarily to the fundamental basis of the complaint, and we see no reason not to reach it here.

have never been confined to historic notions of equality, any more than we have restricted due process to a fixed catalogue of what was at a given time deemed to be the limits of fundamental rights. See Malloy v. Hogan, 378 U.S. 1, 5–6, 84 S.Ct. 1489, 12 L.Ed.2d 653. Notions of what constitutes equal treatment for purposes of the Equal Protection Clause *do* change.

Our problem is whether and to what extent the political theories of the role of the state toward the indigent have changed as reflected in present "notions of what constitutes equal treatment for purposes of the Equal Protection Clause * * * " Political theories of this role are changing in the particular field brought before us in this action, as witnessed by the provision for in forma pauperis civil actions by the Congress and many, perhaps most, of the states.[2] But failure of the other states, including Connecticut, to keep up with this developing trend has not yet been considered by any court to constitute a lack of equal treatment under the Equal Protection Clause.

There are distinctions between the cases involving imprisonment, denial of voting rights and the ordinary civil actions. The relative importance of the subject with respect to which equality is sought must also be taken into account.[3] The right to freedom from unjust imprisonment and the right of franchise were of particular concern to the framers of the Constitution and Bill of Rights and the post-Civil War amendments. Moreover, in the criminal, habeas corpus and eviction cases there is some direct state action involved, not present in most private civil actions, a factor which may have some weight in denying the state a right to discriminate in the first mentioned type of action by fee requirements. In the ordinary civil (including divorce) case the state has no such direct partici-

pation, merely providing the judicial machinery for determination of the disputes. And the state does have at least two legitimate purposes in court fees, first, providing financial support for the court establishment (perhaps one-fifth of its cost in Connecticut, we are told), and second, discouraging resort to litigation in purely frivolous matters, which might much more often be filed by indigent and affluent alike if the service were entirely free from cost.

It is, however, entirely possible that the failure of the state to provide in forma pauperis relief in the civil courts is the product, not of considered choice or deliberate classification, but rather of inertia born of lack of existence of the problems of the indigent in present proportions, or at least lack of recognition of their present extent as it affects availability to the indigent of the processes of the civil courts open to others. In these circumstances we should hesitate to act in any case until the ordinary political processes have an opportunity to function in normal course.

■ Many states—at least 23, we are told, as well as the United States, provide that indigents may proceed in the civil courts in forma pauperis, without payment of fees. We agree that this is desirable, and that Connecticut might well follow the example and remove the discrimination now suffered by the indigent in access to the civil courts. But we do not feel that the present system, undesirable as it is, is a denial of a right so fundamental that the Constitution, by the equal protection or due process clause, forbids the state from its continuance.

Militating against striking down the present fee legislation by judicial fiat is the extreme difficulty of judicial determination of the course the state should be required to follow. Should the relief agencies provide the fees as part of support to the indigent? From what

2. See the Indigent's Right to Counsel in Civil Cases, 76 Y.L.J. 545, 559 n. 68 (1967).

3. In *Harper* the court said at p. 670 of 86 S.Ct., at p. 1083 of 86 S.Ct.: "the right to vote is too precious, too fundamental to be so burdened or conditioned."

source should such funds be obtained, and how should they be administered? Should the state courts be required to waive court fees for the indigent? The choice of which method is more fitted to the needs and policy of the state is a legislative choice the courts should take on only if necessary. Likewise with related matters. Should the state pay for the indigent other quite essential costs, which are not now provided or paid for by the state for any private litigants, such as process service fees, or service by publication, investigative and legal services?

The duties to its disadvantaged people of an affluent society, as represented by its public institutions, are being recognized more fully daily. Where the handicaps of poverty have resulted in unequal justice in criminal matters the courts have found in the equal protection clause a source of authority to correct the inequalities and to strike down criminal sanctions imposed on those denied equal protection.

Although with some hesitation, we conclude that the court should not, by resort to the Constitutional guarantees which for 100 years have been considered not to demand such state action, attempt to speed up the amelioration of the lot of the indigent by forcing the state to provide free access to the civil courts without payment of a relatively modest fee.[4] We should rather leave this to correction by the political process through legislative action, which may reach a more satisfactory result more speedily than the presently available machinery of the courts can effectively accomplish.[5]

Motion granted. Complaint dismissed.[6] Judgment may enter dismissing the action. No further order is necessary.

---

4. We are informed that in the case of Davis v. Davis, supra p. 6, the plaintiff has abandoned plans to appeal from the denial of her application to proceed in forma pauperis and intends to pursue her divorce immediately in the Superior Court at Bridgeport.

5. See Note "Discriminations Against the Poor and the Fourteenth Amendment", 81 H.L.R. 435, 452 (1967).

6. In view of the disposition of the motion to dismiss, we do not reach the question of whether plaintiffs represent a properly constituted class. Nor do we find it necessary to discuss defendants' contention that the state's particular interest in the preservation of the family entitles it to discourage divorce, except to point out that the legislation under attack reveals no such intention, since the fee is the same in divorce actions as in other civil actions.