William **BYNUM**, on behalf of himself and all others similarly situated

v.

**CONNECTICUT COMMISSION ON FOR-FEITED RIGHTS et al.**

**Civ. No. 12703.**

United States District Court
D. Connecticut.

Oct. 3, 1968.

William H. Clendenen, Jr., New Haven, Conn., Joseph M. Shortall, New Haven, Conn., for plaintiff.

Robert Killian, State's Atty., Raymond J. Cannon, Asst. Atty. Gen., Edward J. Peters, Jr., Hartford, Conn., for defendants.

## RULING ON MOTION TO CONVENE A THREE-JUDGE DISTRICT COURT

BLUMENFELD, District Judge.

The plaintiff, a convicted felon, now indigent, has filed a motion in this court to convene a three-judge district court under 28 U.S.C. §§ 2281 and 2284 to hear and determine his suit for a declaration that Conn.Gen.Stats. § 9–48 is unconstitutional insofar as it requires that a petition for restoration of his voting rights "shall be accompanied by a fee of five dollars to cover recording costs." His complaint also requests an injunction requiring the members of the Connecticut Commission on Forfeited Rights to accept and process such a petition tendered to them without an accompanying fee.

■ It is now well settled, *see* Green v. Board of Elections, 380 F.2d 445, 448 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968), *quoting* Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129, 130 (2d Cir.), cert. denied, 375 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967), that "[w]hen a complaint for an injunction makes a claim of unconstitutionality which on its face would require a court of three judges * * *, the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action." The threshold question is whether there is a lack of substantiality in the federal question presented "either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of [the Supreme] Court as to foreclose the subject." California Water Serv. Co. v. Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1937).

Whether there are sufficient federal characteristics in what lies at the core of the question presented by this complaint to require invocation of a three-judge district court was considered recently in *Green, supra.* In an opinion by Judge Friendly, thoroughly documented by Supreme Court cases and historical references, the court held Green's contentions —that New York's law depriving a convicted felon of the right to vote was a bill of attainder, denial of equal protection, or cruel and unusual punishment—so obviously lacking in merit as to justify Judge Tyler's denial of a motion for a three-judge district court. (259 F.Supp. 290). The wide sweep of the plaintiff's arguments here and the authorities in support of them are largely repetitious of those amply considered and rejected in *Green.*

However, this case contains an additional element not present in *Green.* Here the petitioner alleges that he has filed a petition for the restoration of his electoral rights with the Commission on Forfeited Rights, but has been informed that the commission will take no action on it until and unless the fee of $5.00 required by the statute is paid. The statute in question, Conn.Gen.Stats. § 9–48, reads:

"Petitions to the commission for the restoration of the privileges of an elector shall be in the form of an affidavit from the petitioner, or from a relative or friend of such petitioner if he is on active duty in the armed forces, stating (a) the crime by conviction of which his electoral rights stand forfeited, the date of such conviction, the court before which it was had, the sentence and date thereof and the date on which such petitioner was released from parole or probation, provided, in lieu of such statements, a certified copy of the judgment against him and a certified copy of his release from parole or probation may accompany the petition, (b) his complete criminal record and (c) his present address and occupation or employment. *Each such petition shall be accompanied by a fee of five dollars to cover recording costs.* Notice of the pendency of the petition and of the time of the hearing shall be given by the commission to the state's attorney or prosecuting attorney of the court in which such conviction was had, to the chief executive officer of the municipality in which the petitioner resides and to the petitioner or to such friend or relative making such petition at least two weeks before the date fixed for such hearing, and such commission may, in its discretion, require the petitioner or such friend or relative presenting such petition to appear in person. The commissioner of state police shall investigate and report to the commission on each such petitioner prior to the hearing if so requested. No petition shall be heard or considered by said commission until six months after the petitioner has been discharged from jail, prison or the reformatory; if the petitioner was released from jail, prison or the reformatory on parole or probation, no such petition shall be heard until six months after the date of discharge from such parole or probation; if the petitioner was fined and no prison, jail or reformatory sentence was imposed or if such sentence was imposed and suspended, no hearing shall be held on any such petition until six months after the date of conviction of the petitioner or until six months after the date of discharge from probation if such probationary period was imposed." (Emphasis added.)

The fairness of the procedures under the statute is unchallenged, but the plaintiff contends that it is unconstitutional insofar as it requires a fee of $5.00 to cover recording costs as a condition precedent to the filing and consideration of an application for the restoration of voting rights. Thus, the issue on this motion is whether that contention is obviously without merit.

■ It does not necessarily follow that because the voting privileges of a convicted felon may be constitutionally forfeited a state is free of constitutional restraints in establishing the terms on

which they may be restored. *Cf.* Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Griffin v. Illinois, 351 U.S. 12, 37, 76 S.Ct. 585, 100 L.Ed. 891 (1955) (Harlan, J., dissenting).

■ The complaint alleges facts which must be taken as true for purposes of this motion. Clark v. Uebersee Finanz–Korp., 332 U.S. 480, 482, 68 S.Ct. 174, 92 L.Ed. 88 (1947); 2A Moore's Federal Practice ¶ 1208 at 2244 (2d ed. 1968). Those pertinent to the issue are as follows. The named plaintiff is unable by reason of his poverty, to pay the said fee. His only source of income is a monthly award from the Connecticut State Welfare Department under its Aid to the Disabled Program, which does not include an amount for the payment of the said fee. Plaintiff's wife, the other member of his household, receives a monthly award under the Welfare Department's Aid to the Blind Program.

Assuming, then, that for lack of $5.00 the plaintiff is barred from having his petition considered, there is effected a classification between those who do and those who do not have that amount. The contention is that this classification, based solely on indigency, is invidious, in violation of equal protection of the laws.

The Supreme Court has held that "to interpose any financial consideration between an indigent prisoner of the State and his exercise of a state right to sue for his liberty is to deny that prisoner the equal protection of the laws." Smith v. Bennett, 365 U.S. 708, 709, 81 S.Ct. 895, 896, 6 L.Ed.2d 37 (1967). *See also* Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585 (1955).

■ But these cases do not announce a general equal protection formula [1] to be applied to every type of case where an individual seeks access to state courts or its administrative bodies. *See* Boddie v. Connecticut, 286 F.Supp. 968 (D.Conn. 1968). There is one feature to be noted about them; they all relate to state initiated criminal proceedings resulting in a deprivation of liberty. Although Bynum has not been denied the right to appeal from his conviction, it could be argued by a prodigy of synthesis that since Conn.Gen.Stats. § 9–46 provides that "An elector shall forfeit his privileges as an elector upon conviction of a felony * * *," that forfeiture was part of the criminal penalty imposed upon him. The next step in the argument would be that his petition for the restoration of those privileges is another link in the chain of criminal proceedings. Since the option to file a petition depends on the payment of a $5.00 fee, this payment constitutes an additional penalty, imposed after his release. In the much more onerous situation where a defendant was required to serve additional imprisonment because of inability to pay a fine, it was held by Judge Weinfeld in United States ex rel. Privitera v. Kross, 239 F.Supp. 118, 120 (S.D.N.Y.), aff'd mem., 345 F.2d 533 (2d Cir.), cert. denied, 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965), that additional imprisonment due to inability to pay a fine did not violate equal protection: "The sentence was not imposed upon petitioner because he was indigent; it was visited upon him because he had committed a crime." That case has some relevance here, if the filing fee is looked upon as an additional penalty.

■ The whole purpose of § 9–48 goes to the deepest root of voter qualifications. It is to determine whether one previously adjudicated (by conviction of a felony) to be unfit to "take part in electing the legislators who make the laws, the executives who enforce these, the prosecutors who must try them for further violations, or the judges who are to consider their cases," 380 F.2d at 451, has become sufficiently rehabilitated after incarceration and parole or pro-

---

1. *See* Harper v. Virginia Bd. of Elections, 383 U.S. 663, 682 n. 3, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (Harlan, J., dissenting).

bation to have erased the threat to society posed by his participation in the law-making process. This was not the case in Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079 (1966), on which plaintiff mainly relies. It would be too hasty to conclude that the poll tax was struck down as unconstitutional in *Harper* on the ground that it was an invidious discrimination against the indigent otherwise qualified to vote. What Mr. Justice Douglas said in the final sentence of the Court's opinion was, "For to repeat, wealth or fee paying has, in our view, *no relation* to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned." (Emphasis added). This removed the poll tax as a condition on the right to vote from the wealthy as well as from the indigent.[2]

While it may no longer be unqualifiedly said, as in Edwards v. California, 314 U.S. 160, 184–185, 62 S.Ct. 164, 86 L.Ed. 119 (1941) (Jackson, J., concurring), that indigency is a "neutral fact" for purposes of legislative classification, under the equal protection clause, neither can it be said that there is an affirmative duty on the part of the state to remove all economic inequalities among its citizens. Certainly poverty is not a neutral fact when it comes to permitting a state to distribute aid or benefits to those in need. There can be no doubt that the last decade has been marked by increasing concern for the poor. Perhaps Connecticut's Legislature might validly have authorized the State Welfare Department to include at least one time an additional amount of $5.00 in its monthly award to all convicted felons who qualify for its

relief rolls to enable them to file a petition for restoration of voting rights; or it might except indigents from the filing-fee requirement. But this court is not a third legislative body. *See* Boddie v. Connecticut, 286 F.Supp. 968 (D.Conn. 1968).

Restoration of forfeited rights may be analogized to a pardon.[3] There is no right to a pardon; that is bestowed as an act of grace by the executive. *See* United States v. Wilson, 32 U.S. (7 Pet.) 150, 160, 8 L.Ed. 640 (1833). It is also comparable to probation, likewise an act of grace, Escoe v. Zerbst, 295 U.S. 490, 492–493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), granted at the time of sentence. And parole, granted afterwards, "is a legislative grace and not a thing of right." Hiatt v. Compagna, 178 F.2d 42, 45 (5th Cir. 1949), aff'd per curiam by an equally divided Court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950). *Cf.* Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956). Considering the restoration of forfeited rights in a similar manner, plaintiff cannot rely on Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S. Ct. 1079 (1966), which outlawed the poll tax. Like the twenty-fourth amendment, *Harper* prohibits conditioning the *right* to vote on payment of a fee, and here plaintiff did not have the right to vote. He is seeking to obtain that right. Different considerations are involved.

Thus far, the Supreme Court has considered only cases where poverty has clearly had an impact upon the exercise of recognized constitutional rights. When it was presented with a case where a plea of indigency was asserted to overcome the requirement of an onerous bond

2. Furthermore, the recording fee is not a tax for general revenue purposes. It is a flat service charge used to meet only the recording costs incurred by the state to process the plaintiff's petition. "There is nothing contrary to the Constitution in the charge of a fee limited to the purpose stated." Cox v. New Hampshire, 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1044 (1941). *Cf.* Murdock v. Pennsylvania, 319 U.S. 105, 114 n. 8, 63 S.Ct. 870, 875, 87 L.Ed.

1292 (1943): "While a state may not exact a license tax for the privilege of carrying on interstate commerce * * * it may, for example, exact a fee to defray the cost of purely local regulations in spite of the fact that those regulations incidentally affect commerce."

3. In New York, pardon is a basis for the restoration of forfeited rights. *See* N.Y. Election Law § 153 (1964).

for costs and rent to stay eviction proceedings pending a trial, denial of certiorari left the constitutional issue undecided, three judges dissenting. Williams v. Shaffer, 385 U.S. 1037, 87 S.Ct. 772, 17 L.Ed.2d 683 (1967).

 The relative importance of the interest with respect to which equality is sought is not irrelevant.[4] The plaintiff's interest in this case has no roots in the Constitution. He is not entitled to a personal hearing before the commission, or to judicial review. The interest at stake in being allowed to present himself as a worthy object of an act of legislative grace is, both by statute and tradition, at the very bottom of those which a state must regard. It is so far beyond the pale of rights entitled to judicial protection that I have no hesitancy in holding that a modest fee requirement to present it does not deny equal protection to one not able to pay it.

 A three-judge district court is not required where a cause does not present a substantial constitutional question. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bell v. Waterfront Comm'n, 279 F.2d 853, 857–858 (2d Cir. 1960). The claim that Connecticut's statute requiring a convicted felon who petitions for restoration of his voting privileges is unconstitutional because the petition must be accompanied by a fee of $5.00 is so obviously without

merit that it would be impermissible to convene three judges to consider it.

The motion for a three-judge district court is denied.

The complaint is dismissed.

---

4. The extent to which a court will recognize an individual's claim of infringement of his constitutional rights by a state statute depends on the nature and quality of the right involved. In equal protection cases, "[o]ne element is the relative invidiousness of the particular differentiation * * *. The second element is the relative importance of the subject with respect to which equality is sought * * *. But although one can identify the critical elements, the opinions seem notably unsuccessful in elaborating a rational standard * * *." Cox, Foreward: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L.Rev. 91, 95 (1966). The opinions do support the general proposition, however. *See, e.g.,* United States v. Carolene Prods. Co., 304 U.S.

144, 152 n. 4, 58 S.Ct. 778, 783, 82 L. Ed. 1234 (1938) ("There may be a narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution * * *."); Murdock v. Pennsylvania, 319 U.S. 105, 115, 63 S.Ct. 870, 876 (1943) ("Freedom of press, freedom of speech, freedom of religion are in a preferred position."); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 670, 86 S.Ct. 1079, 1083 (1966) ("We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined.").