**William BYNUM, on behalf of himself and all others similarly situated, Plaintiff-Appellant,**

**v.**

**CONNECTICUT COMMISSION ON FORFEITED RIGHTS: Gertrude P. O'Donnell and Sebastian Polo, individually and as members of the Connecticut Commission on Forfeited Rights; Lucy C. Rossi, individually and as Executive Secretary of the Connecticut Commission on Forfeited Rights, Defendants-Appellees.**

**No. 429, Docket 32952.**

United States Court of Appeals Second Circuit.

Argued April 9, 1969.

Decided April 22, 1969.

---

William H. Clendenen, Jr., New Haven, Conn., for plaintiff-appellant.

Raymond J. Cannon, Hartford, Conn. (Robert K. Williams, Atty. Gen., on the brief), for defendants-appellees.

Before KAUFMAN, HAYS and FEINBERG, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

We are confronted with a challenge to the constitutionality of Conn.Gen.Stat. Ann. § 9–48,[1] which requires an ex-felon to pay a $5.00 fee before he may petition the Connecticut Commission on Forfeited

1. Section 9–48 provides as follows:

"Petitions to the commission for the restoration of the privileges of an elector shall be in the form of an affidavit from the petitioner, or from a relative or friend of such petitioner if he is on active duty in the armed forces, stating (a) the crime by conviction of which his electoral rights stand forfeited, the date of such conviction, the court before which it was had, the sentence and date thereof and the date on which such petitioner was released from parole or probation, provided, in lieu of such statements, a certified copy of the judgment against him and a certifed copy of his release from parole or probation may accompany the petition, (b) his complete criminal record and (c) his present address and occupation or employment. *Each such petition shall be accompanied by a fee of five dollars to cover recording costs.* Notice of the pendency of the petition and of the time of the hearing shall be given by the commission to the state's attorney or prosecuting attorney of the -court in which such conviction was had, to the chief executive officer of the municipality in which the petitioner resides and to the petitioner or to such friend or relative making such petition at least two weeks before the date fixed for such hearing, and such commission may, in its discretion, require the petitioner or such friend or relative presenting such petition to appear in person. The commissioner of state police shall investigate and report to the commission on each such petitioner prior to the hearing if so requested. No petition shall be heard or considered by said commission until six months after the petitioner has been discharged from jail, prison or the reformatory; if the petitioner was released from jail, prison or the reformatory on parole or probation, no such petition shall be heard until six months after the date of discharge from such parole or probation; if the petitioner was fined and no prison, jail or reformatory sentence was imposed or if such

Rights for restoration of his voting rights.

William Bynum contends that this fee discriminates against the indigent, thus depriving them of the equal protection of the law in violation of the 14th Amendment to the Constitution. He brought an action in the district court for the District of Connecticut, seeking an injunction and declaratory judgment restraining the enforcement of the statute and declaring it unconstitutional. He also moved to convene a three-judge court pursuant to 28 U.S.C. § 2281, for the purpose of requiring the Commission to accept his petition without fee. Judge Blumenfeld denied his motion and dismissed the complaint. For the reasons set out below, we believe that Bynum raises a substantial question which merits the consideration of a three-judge court.

William Bynum, now 42, was convicted of statutory burglary in 1955.[2] However, the one year sentence he received was suspended and he was discharged from his probation in 1957. Although Bynum was apparently entitled to vote in Connecticut elections before his conviction, his crime caused him to forfeit his privilege as an elector. Conn.Gen. Stat.Ann. § 9–46. He has since continued his residence in Connecticut and alleges that he is qualified for consideration by the Commission on Forfeited Rights which was established by the Connecticut legislature for the purpose of passing on petitions by ex-felons, such as Bynum, for restoration of their privilege as electors. Conn.Gen.Stat.Ann. § 9–47.

In 1968 Bynum submitted a peition to the Commission, seeking to regain his right to vote. Subsequently, he was notified by the executive secretary of the Commission that no action whatsoever would be taken by the Commission on his application until he paid the $5.00 fee required by § 9–48 "to cover recording costs."

Bynum complains that he is unable to pay this sum by reason of his poverty. His only source of income, he states, is a monthly award from the Connecticut State Welfare Department under its Aid to the Disabled Program, which does not include an amount for payment of this fee. Bynum's wife, the only other member of his household, receives a similar monthly award under the State Welfare Department's Aid to the Blind Program.

Bynum contends that the state's rule requiring the $5.00 fee before his petition will be considered, unjustly discriminates against the poor. We believe it appropriate at this point to clarify Bynum's argument so that it can be distinguished from the claim urged upon the court in Green v. Board of Elections, 380 F.2d 445 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). In *Green* we declared that New York properly could deny the franchise to vote to those convicted of felonies without violating the equal protection clause of the 14th Amendment. We emphasized that a distinction between those who have adhered to the social compact and those who have broken it by committing felonies is not irrational as a basis for determining who may or may not vote. Bynum agrees that Connecticut may bar him and other ex-felons from the ballot box. Moreover, he does not take issue with the state's power to exercise discretion in deciding which ex-felons have been rehabilitated sufficiently to merit restoration of their voting rights. The focal question is whether Connecticut, once having agreed to permit ex-felons to regain their vote and having established administrative ma-

---

sentence was imposed and suspended, no hearing shall be held on any such petition until six months after the date of conviction of the petitioner or until six months after the date of discharge from probation if such probationary period was imposed." (Emphasis supplied.)

2. For the purposes of deciding this appeal, we must accept all the allegations of his complaint as true. See 2A Moore, Federal Practice ¶1208 at 2244 (2d ed. 1968).

chinery for this purpose, can then deny access to this relief, solely because one is too poor to pay the required fee.

■■■ Having stated the sole issue raised by the complaint we proceed to determine whether Judge Blumenfeld was correct in dismissing the complaint denying Bynum's motion for a three-judge court—the only body which can enjoin the enforcement of a state statute, 28 U.S.C. § 2281—because as Judge Blumenfeld put it, the argument Bynum raised was not "substantial" enough to merit the § 2281 procedure. It is retrodding well-plowed ground to state that an issue must be substantial before the costs of convening a three-judge court should be incurred. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Schneider v. Rusk, 372 U.S. 224, 83 S.Ct. 621, 9 L.Ed. 2d 695 (1963); Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129 (2d Cir.), cert. denied 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967); Green v. Board of Elections, supra, 380 F.2d at 448. And, the Supreme Court has instructed that the lack of substantiality may appear "either because it [the issue raised] is obviously without merit or because its unsoundness so clearly results from the previous decisions of this Court as to foreclose the subject." California Water Service v. City of Redding, 304 U.S. 252, 255, 58 S. Ct. 865, 867, 82 L.Ed. 1323 (1938).

■■■ Consideration of Bynum's claim leads us to the conclusion that it is not insubstantial or obviously without merit; nor is it foreclosed by the decisions of the Supreme Court. Indeed, much of plaintiff's argument is buttressed by the Court's recent opinion in Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966), striking down the state poll tax as violative of the equal protection clause.

We have no need to labor or determine the merits of Bynum's contention. Kramer v. Union Free School Dist., 379 F.2d 491 (2d Cir. 1967). While there may indeed be instances when we would "accomplish little save elegantia juris" by

reversing and convening a three-judge court which would ultimately dismiss the complaint, Green, supra, 380 F.2d at 449, we do not believe this is such a case. The answer to Bynum's conundrum does not bob to the surface because of its own lack of weight.

In any event, we believe we should indicate why we are of the view that Bynum's claim is substantial. As indicated, his principal argument stems from Harper which decreed that "[w]ealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process." 383 U.S. at 668, 86 S.Ct. at 1082. Accordingly, Bynum argues that ability to pay the $5.00 fee is unrelated to the question of his rehabilitation and readiness for return to the electorate. To deny some persons who may be rehabilitated access to the Commission solely on the basis of their financial condition is, he asserts, arbitrary and unreasonable, and hence a denial of the equal protection of the law, in violation of the 14th Amendment. See Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1955); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891, 55 A.L.R.2d 1055 (1956).

To reinforce his argument, we are directed to the explicit Congressional finding, in the Voting Rights Act of 1965, that the poll tax "does not bear a reasonable relationship to any legitimate State interest in the conduct of elections * * *" 42 U.S.C. § 1973h(a). See also Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); United States v. County Bd. of Elections, 248 F. Supp. 316 (W.D.N.Y.1965), appeal dismissed 383 U.S. 575, 86 S.Ct. 1077, 16 L. Ed.2d 107; Gray v. Johnson, 234 F.Supp. 743 (S.D.Miss.1964). In short, Bynum contends the teaching that wealth is unrelated to voter qualifications does not apply merely to poll taxes but to any financial qualification on voting. "To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor. The degree of the discrimination is irrelevant * * * [W]ealth or fee pay-

ing has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned." Harper, *supra*, 383 U.S. at 668, 670, 86 S.Ct. at 1083.

To rebut arguments raised in defense of § 9–48, Bynum contends that it does not matter whether granting him permission to file his petition is denominated a "'right" or a "privilege." See Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1967). In either case the right or privilege is claimed to be fundamental, and not to be interfered with except for the most pressing reasons. The meagre amount of revenue Connecticut receives in filing fees from impoverished ex-felons is not such a compelling reason, Bynum argues, and in any event does not justify the suppression of something as precious as a vote. Cf. Follett v. Town of McCormick, 321 U.S. 573, 64 S.Ct. 717, 88 L.Ed. 938, 152 A.L.R. 317 (1944); Murdock v. Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, 146 A.L.R. 81 (1943); Grosjean v. American Press Company, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936). And although the district court likened Bynum's application to a pardon, which is a matter of grace, Bynum replies that while he does not contest the state's discretion to grant or withhold the franchise from him, the state cannot arbitrarily refuse to consider his case at all while at the same time it reviews the petitions of those who can pay the fee.

The District Court's opinion indicates that much reliance was being placed on the fact that the relevant equal protection cases were limited to criminal proceedings. Scholars, however, have recently construed *Harper*, as Bynum does, to move equal protection beyond the area of criminal law and perhaps point "the way to a more general attack by the Court on inequalities caused by differing private circumstances." Developments in the Law: Equal Protection, 82 Harv. L.Rev. 1065, 1180–81 (1969). While there may well be civil fees to which the equal protection clause does not apply, see Boddie v. Connecticut, 286 F.Supp. 968 (D.Conn.1968), the issue raised here is so closely intertwined with the exercise of the political franchise (where the doctrine of equal protection does apply, see Harper, *supra*; Carrington v. Rash, *supra*; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964)) that we cannot dismiss the problem out of hand.

We are well aware of the extra burden in time and effort that convening a three-judge court imposes upon the judicial system, particularly when the district judge has already gone to the effort of writing a carefully considered opinion denying the motion. See generally, Carrington, Crowded Dockets and the Courts of Appeals: The Threat to the Function of Review and the National Law, 82 Harv.L.Rev. 642 (1969). It would not be inappropriate, therefore, to reiterate the words of my brother Hays in *Kramer*, *supra*, that "[a]lthough an occasional reversal is therefore the inevitable price of a district judge's exercise of his responsibility in cases where a three-judge court is requested, the risk of reversal is much to be preferred to the alternative of automatically convening a three-judge court to hear such claims without a careful consideration of their substantiality," 379 F.2d at 495. We have ourselves undertaken such a consideration here and conclude that while the ultimate result is still uncertain, Bynum has presented a substantial issue.

In sum, the question is certainly within the scope of § 2281. Accordingly we reverse and remand so that a three-judge court may be convened. We add that there are certain factual issues, such as the exact degree of Bynum's poverty, which will have to be resolved by that court.