[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17321
Non-Argument Calendar
_____

D.C. Docket No. 5:16-cv-00562-JSM-PRL

RALPH A. UDICK,

Plaintiff – Appellant,

versus

THE STATE OF FLORIDA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 25, 2017)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

The Florida District Courts of Appeals ("DCAs") affirm some lower court

judgments through "per curiam affirmances" ("PCAs")—unsigned, unpublished

opinions that lack reasoned analysis and consist solely of the word "Affirmed"— which the Florida Supreme Court has no jurisdiction to review.  Ralph Udick, proceeding *pro se*, sued the State of Florida to obtain a declaration that this practice violates the Fourteenth Amendment and that two PCAs entered against him in a case he appealed are null and void.  The district court dismissed his complaint on the ground, among others, that Florida enjoyed sovereign immunity under the Eleventh Amendment.  On appeal, Udick contends that Florida is not immune from his suit.  Upon careful review, we affirm.

## I.    BACKGROUND

### A.    PCAs' Role in Florida's Judicial Structure

To relieve the Florida Supreme Court of burdens in administering justice caused by its growing docket congestion, Florida's legislature created the DCAs "to be courts of final, appellate jurisdiction" in most cases.  *Lake v. Lake*, 103 So. 2d 639, 641-42 (Fla. 1958).  As such, DCA opinions are "in most instances . . . final and absolute," with the Florida Supreme Court serving primarily "as a supervisory body . . . exercising appellate power in certain specified areas essential to the settlement of issues of public importance and the preservation of uniformity of principle and practice."[1]  *Ansin v. Thurston*, 101 So. 2d 808, 810 (Fla. 1958).

---

[1] The Florida Supreme Court may hear appeals only from those decisions of the DCAs "declaring invalid a state statute or a provision of the state constitution;" "expressly declar[ing] valid a state statute;" "expressly constru[ing] a provision of the state or federal constitution[;]"

Shortly after the DCAs' creation, the Florida Supreme Court declared that it would not review a PCA unless the PCA "prima facie conflicts with a decision of another [DCA] or of the Supreme Court on the same point of law." *Lake*, 103 So. 2d at 643. Yet litigants continued to inundate the Court with appeals from PCAs. *Foley v. Weaver Drugs, Inc.*, 177 So. 2d 221, 223 (Fla. 1965). Processing these appeals exhausted the Court's judicial resources. *Id.* And so, at the Court's urging, Florida's legislature amended the state's constitution to strip the Florida Supreme Court of jurisdiction to review PCAs altogether, even where the lower court decision being affirmed arguably disregarded a state statute. *See* Fla. Const. art. V, § 3(b)(3); *Jackson v. State*, 926 So. 2d 1262, 1266 (Fla. 2006); *Jenkins v. State*, 385 So. 2d 1356, 1359 (Fla. 1980). As a result, the Florida Supreme Court lacks jurisdiction over PCAs in all contexts. *Jackson*, 926 So. 2d at 1266.

**B.     Udick's Lawsuits Against His Homeowners' Association**

Ralph Udick filed two complaints against his homeowners' association, Harbor Hills Development L.P., in Lake County Circuit Court, challenging the association's assessment of certain fees. The circuit court granted Harbor Hills summary judgment in both suits, determining in each that res judicata precluded

---

"expressly affect[ing] a class of constitutional or state officers;" "expressly and directly conflict[ing] with a decision of another [DCA] or of the supreme court on the same question of law;" or "pass[ing] upon a question certified by it to be of great public importance, or that is certified by it to be in direct conflict with a decision of another [DCA]." Fla. Const. art. V §§ 3(b)(1), (3)-(4).

3

judgment in Udick's favor because Udick had notice of an earlier Harbor Hills derivative suit brought on behalf of the entire class of homeowners, but did not ask to be removed or excluded from the class.  The DCA affirmed both judgments.  In the first case, it published a five-page opinion.  That opinion is not at issue here.  In the second case, it issued a PCA.

Udick requested rehearing en banc as to the PCA, which the DCA denied. Udick then appealed the PCA to the Florida Supreme Court, which dismissed his appeal for lack of jurisdiction.  The DCA granted Harbor Hills's motion for attorney's fees and remanded the case to the circuit court to determine the amount of the fee award.  The circuit court awarded Harbor Hills $55,342.50, plus interest, in attorney's fees and expert fees.  Udick appealed the circuit court's attorney's fee award, and the DCA issued a second PCA.

## C.    Udick's Present Suit

Udick filed a complaint against the State of Florida in the United States District Court, asserting that PCAs' nonreviewability violates the Fourteenth Amendment's Due Process and Equal Protection Clauses.  He requested that the district court (1) declare Florida's PCA system unconstitutional and the PCAs entered against him in his appeals null and void, or in the alternative (2) direct the Florida Supreme Court to review the PCAs.  Florida moved to dismiss.

4

The district court granted Florida's motion to dismiss on the grounds that (1) the state enjoyed immunity from suit under the Eleventh Amendment; (2) the *Rooker-Feldman* doctrine precluded jurisdiction because Udick sought to invalidate his state court judgments, *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); and (3) Udick failed to state a claim upon which relief could be granted. Udick moved to alter or amend the court's judgment and sought leave to file an amended complaint, so that he could remove his request for a declaration that his PCAs are null and void and add the Governor of Florida and the Florida Supreme Court as defendants. The district court denied both motions, determining that Udick had articulated no reason why its order was erroneous or should be vacated, and that his proposed amendments to the complaint would be futile. Udick timely appealed.

## II.    STANDARD OF REVIEW

"A district court's order denying or granting a motion to dismiss a complaint against a state based on the Eleventh Amendment's grant of sovereign immunity is reviewed by this court *de novo*." *In re Emp't Discrimination Litig. Against Ala.*, 198 F.3d 1305, 1310 (11th Cir. 1999). We also review *de novo* a district court's determination that it lacked subject matter jurisdiction over a suit in light of the *Rooker-Feldman* doctrine. *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 (11th Cir. 2001). "Although we review a district court's denial of a motion to

5

amend only for abuse of discretion, we review *de novo* a decision that a particular amendment to the complaint would be futile." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

### III.   ANALYSIS

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Although, by its terms, the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court [in *Hans v. Louisiana*] has extended its protections to apply in such cases." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)).

"The Eleventh Amendment bar to suit is not absolute," however, as "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal citations omitted). Moreover, under the *Ex Parte Young* doctrine, "official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the

6

state and thus are not barred by the Eleventh Amendment." *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). The *Ex Parte Young* doctrine is a "narrow" "exception" to state sovereign immunity; "[i]t applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (internal citation omitted).

The Eleventh Amendment barred Udick's suit. *See Abusaid*, 405 F.3d at 15. Udick does not argue that Florida consented to be sued or that Congress validly abrogated the State's Eleventh Amendment immunity. He instead argues that the Eleventh Amendment does not prohibit a person from suing his own state, and that he may sue Florida as a citizen of Florida. Acknowledging that *Hans* holds otherwise, Udick contends that *Hans* contravenes the Eleventh Amendment's text and thus is invalid. Even if we agreed, we lack authority to disregard *Hans*, which remains good law and thus commands our adherence unless and until the Supreme Court says otherwise. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (citing *Hans* as binding authority).

Nor can Udick sue Florida under the *Ex Parte Young* doctrine, as he argues, because that doctrine permits only suits against state officials, not the State itself.

7

*P.R. Aqueduct*, 506 U.S. at 146; *Scott*, 405 F.3d at 1255.  Udick suggests that the Eleventh Amendment does not apply to suits challenging State actions alleged to violate the Fourteenth Amendment's Due Process or Equal Protection Clauses, but the cases he cites for this contention are distinguishable from the matter at hand. *Lawrence v. Texas*, *Loving v. Virginia*, and *Griswold v. Connecticut* each reviewed the constitutionality of criminal statutes, *Lawrence*, 539 U.S. 558, 562 (2003); *Loving*, 388 U.S. 1, 2-3 (1967); *Griswold*, 381 U.S. 479, 480 (1965), and thus did not involve suits brought "against a state . . . by its own citizens," *Abusaid*, 405 F.3d at 1303; *see also Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 412 (1821) (holding that a criminal defendant who appeals a judgment rendered against him to the Supreme Court "does not commence or prosecute a suit against [a] State."). Similarly, *Roe v. Wade*, *Boddie v. Connecticut*, and *Brown v. Board of Education* involved actions to enjoin state officials from enforcing allegedly unconstitutional statutes.  *Roe*, 410 U.S. 113, 120 (1973); *Boddie*, 91 U.S. 371, 373 (1971);[2] *Brown*, 347 U.S. 483, 486 n.1 (1954).[3]  *Tennessee v. Lane* involved a valid congressional

---

[2] The *Boddie* plaintiffs had initially sued Connecticut directly, but conceded before the district court that the state was not a proper party to the action.  *See Boddie v. Connecticut*, 286 F. Supp. 968, 971 (D. Conn. 1968).

[3] The *Brown* plaintiffs also sued local school boards, which do not necessarily receive Eleventh Amendment immunity.  *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977) ("[A] local school board such as petitioner is more like a county or city than it is like an arm of the State . . . . [and thus] was not entitled to assert any Eleventh Amendment immunity from suit in the federal courts."); *Walker v. Jefferson Cty. Bd. of Educ.*, 771 F.3d 748, 751 (11th Cir. 2014) ("We appl[y] a [multi]-factor test to determine whether [a] school board enjoy[s] Eleventh Amendment immunity under federal law.").

abrogation of state sovereign immunity, 541 U.S. 509, 533 (2004), a circumstance Udick does not contend is present here.  None of these cases held that a plaintiff may sue a non-consenting state in federal court to assert a Fourteenth Amendment violation absent a valid congressional abrogation of a State's sovereign immunity.

## IV.    CONCLUSION

For these reasons, the district court did not err in dismissing Udick's suit on the basis of Florida's sovereign immunity.[4]

**AFFIRMED.**

---

[4] We need not decide whether the district court abused its discretion in denying Udick's motion to amend his complaint to add the Governor of Florida and the Florida Supreme Court as defendants, as Udick has abandoned this argument by failing to raise it on appeal.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, . . . issues not briefed on appeal by a pro se litigant are deemed abandoned . . . .").

Having concluded that Florida is immune from Udick's suit under the Eleventh Amendment, we need not consider the district court's alternative determinations that it lacked jurisdiction over Udick's suit under the *Rooker-Feldman* doctrine and that Udick failed to state a claim upon which relief could be granted.  We also need not decide whether the district court abused its discretion in denying Udick leave to amend his complaint to avoid implicating the *Rooker-Feldman* doctrine, as such amendment would have been futile given that Udick's suit properly was subject to dismissal due to Florida's sovereign immunity.  *See Cockrell*, 510 F.3d at 1310 ("Leave to amend a complaint is futile [and thus properly denied] when the complaint as amended would still be properly dismissed . . . .").