[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-11302

_____

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 13, 2005
THOMAS K. KAHN
CLERK**

D. C. Docket No. 02-01851 CV-ODE-1

JACQUELINE SCOTT,

Plaintiff-Appellee,

versus

MARK F. TAYLOR,
in his official capacity as
Lieutenant Governor of Georgia,
STAN WATSON,
in his official capacity as Chairperson of the
DeKalb County House Delegation and a member
of the Georgia House of Representatives, et al.,

Defendants-Appellants,

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 13, 2005)

Before ANDERSON and WILSON, Circuit Judges, and JORDAN[*], District Judge.

_____

[*] Honorable Adalberto Jordan, United States Judge for the Southern District of Florida, sitting by designation.

ANDERSON, Circuit Judge:

This appeal raises the question of whether individual state legislators are entitled to absolute legislative immunity from official capacity suits for prospective relief. The district court denied the state legislator defendants' motion for judgment on the pleadings, holding that legislative immunity does not apply to such suits. Because the state legislators are entitled to absolute legislative immunity, we reverse and remand with instructions that they be dismissed.

## I. BACKGROUND

Appellee Jacqueline Scott, a white Democrat, is a former DeKalb County Commissioner. She served as the representative of the county's third district from 1991-2002. In 2002, the Georgia General Assembly passed "Act 401," which adopted a new district map for the DeKalb County Commission. Under Act 401, the area of DeKalb County where Scott resides was removed from district three and added to district five. Scott thereby lost her incumbent status in district three, and she was not elected to the Commission in the November 2002 elections.

Scott filed her complaint in July, 2002. In it, she alleged that she was moved out of the third district in an effort to achieve a majority black Commission and that this constituted wrongful racial discrimination and violated 42 U.S.C. §

2

1983. She named Mark Taylor, the Lieutenant Governor of Georgia, Tom Murphy (since exchanged for Glenn Richardson[1]), the Speaker of Georgia's House of Representatives, Stan Watson, the Chairperson of the DeKalb County House Delegation, and Nadine Thomas, the Chairperson of the DeKalb County Senate Delegation, as defendants. All four of these defendants ("Appellants") were sued only in their official capacities. Scott also named as a defendant the DeKalb County Board of Elections and Voter Registration ("Board of Elections"). She sought declaratory and injunctive relief for her § 1983 claim as well as an award of attorney's fees pursuant to 42 U.S.C. § 1988. She did not dispute that Act 401 was enacted as part of the state's legislative process and that Appellants acted in their legislative capacities.

After the close of discovery, Appellants successfully moved to amend their answer to include the defense of legislative immunity. They simultaneously moved for judgment on the pleadings based on their amended answer, arguing that legislative immunity bars official capacity suits for injunctive and declaratory relief against state legislators. The district court issued an order denying Appellants' motion for judgment on the pleadings. Appellants' interlocutory

---

[1] Glenn Richardson was substituted as a party pursuant to Fed. R. Civ. P. 26(d)(1), which provides for automatic substitution when a public officer who is a party to an action in an official capacity is succeeded in office during the pendency of the action.

appeal of that order is now before this court.[2]

## II. STANDARD OF REVIEW

We review the denial of a motion for judgment on the pleadings de novo. Cannon v. City of West Palm Beach, 250 F.3d 1299, 1301 (11th Cir. 2001). Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. Id. All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party. Id.

## III. DISCUSSION

We believe that the Supreme Court's opinion in Consumers Union v. Supreme Court of Virginia is controlling in this case. 446 U.S. 719, 100 S. Ct. 1967 (1980). In Consumers Union, plaintiffs brought a § 1983 challenge to the attorney disciplinary rules promulgated by the Supreme Court of Virginia (Virginia Court). Id. at 721, 100 S. Ct. at 1969. The complaint named the Virginia Court's chief justice in his individual and official capacities and sought

---

[2] This is a directly appealable interlocutory order, as legislative immunity is effectively lost if the defendants are forced to proceed with a trial. See Ellis v. Coffee County Bd. of Registrars, 981 F.2d 1185, 1189 (11th Cir. 1996).

4

declaratory and injunctive relief.  Id. at 725-26, 100 S. Ct. at 1971.  One of the issues before the Supreme Court was whether the Virginia Court and its chief justice were entitled to any sort of immunity.  Id. at 721, 100 S. Ct. at 1969.

After concluding that the Virginia Court acted in a legislative capacity when promulgating the challenged rules, the Supreme Court turned to its legislative immunity analysis.  Id. at 731, 100 S. Ct. at 1974.  The Court noted that "state legislators enjoy common law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause."  Id. at 732, 100 S. Ct. at 1974.  This immunity was not abrogated by § 1983, and it applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief.  Id. at 732-33, 100 S. Ct. at 1974-75.  There could be "little doubt," the Court concluded, that the plaintiffs could not have maintained their suit "against the [state] legislature, its committees, or members."  Id. at 733, 100 S. Ct. at 1975.  The Court then held that, because state legislatures and their members are immune to suit, "the Virginia Court and its members [were] immune to suit when acting in their legislative capacity."  Id. at 734, 100 S. Ct. at 1976.  The square holding of Consumers Union applies with full force here; these state legislator defendants enjoy legislative immunity protecting them from a suit challenging their actions taken in their

5

official legislative capacities[3] and seeking declaratory or injunctive relief.

Scott seeks to distinguish Consumers Union by arguing that the Supreme Court did not distinguish between personal and official capacity actions when discussing legislative immunity.[4] Appellee relies on Kentucky v. Graham, 473 U.S. 159, 105 S. Ct. 3099 (1985). In Graham, the Court emphasized "the practical and doctrinal differences between personal and official capacity actions." Id. at 166, 105 S. Ct. at 3105. One key difference between individual and official capacity suits is the available defenses. Id. The Court noted that a government official sued in his individual capacity may be entitled to various personal immunity defenses. Id. However, because an official capacity suit against a government official is generally treated as a suit against the underlying governmental entity, such personal immunity defenses are unavailable. Id. at 165-67, 105 S. Ct. at 3105-06. In this regard, the court stated:

---

[3] Scott here challenges these defendants' actions only in their legislative capacity. Indeed, it is undisputed that these defendants have no role at all with respect to the enforcement or implementation of the challenged voting districts.

[4] We acknowledge that the Consumers Union Court, in the particular portion of the opinion dealing with legislative immunity, did not make explicit reference to the fact that the chief justice of the Virginia Court was entitled to legislative immunity in both his individual and official capacities. However, it is clear that the Court's holding applied in both capacities. As noted in the text above, the chief justice was sued in both capacities, and the Court held that he was entitled to legislative immunity. Had the Court intended to limit its holding to the chief justice's individual capacity, that would have left pending the plaintiffs' official capacity claim; however, the court clearly left no such claim pending.

> In an official-capacity action, these defenses are unavailable. ... The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment.

Id. at 167, 105 S.Ct. at 3106 (citations omitted).

Scott relies on the foregoing language in Graham in arguing that the instant action sues the state legislators in their official capacity and that these defendants therefore are not entitled to legislative immunity, a personal defense. Scott's argument fails to appreciate an important exception to the Graham opinion's general rule.

As the Graham Court stated, personal defenses are generally unavailable in official capacity suits because such suits are treated as suits against the underlying entity. Id. at 166-67, 105 S.Ct. at 3105-06. The exception, however, is derived from Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441 (1909), which held that official capacity suits for prospective relief to enjoin state officials from enforcing unconstitutional acts are not deemed to be suits against the state and thus are not barred by the Eleventh Amendment.[5] Indeed, Graham itself recognized this in a footnote appended to the passage quoted above. That footnote stated in relevant

---

[5] If official capacity actions against state legislators were treated as actions against the state, they would be barred by states' Eleventh Amendment sovereign immunity. See Graham, 473 U.S. at 167 n.14, 105 S. Ct. at 3106 n.14.

part:

> Unless a state has waived its Eleventh Amendment immunity or Congress has overridden it, a state cannot be sued directly in its own name regardless of the relief sought .... Thus, implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State. See Ex Parte Young.

Graham, 473 U.S. at 167 n.14, 105 S.Ct. at 3106 n.14. Thus, the instant action – seeking prospective relief against these state legislator defendants in their official capacities – is not to be treated as a action against the entity. Therefore, the general rule of Graham is not applicable.

For these reasons, our holding is not only controlled by Consumers Union, it is entirely consistent with Graham. Indeed, the Supreme Court in Graham discussed and expressly approved of the Consumers Union Court's holding that the Virginia Supreme Court's chief justice was protected by absolute legislative immunity when sued in his official capacity for promulgating an attorney ethics code that violated the First Amendment. The Court in Graham stated:

> We recognized as much in Supreme Court of Virginia, supra. There, a three-judge District Court had found the Virginia Supreme Court and its chief justice in his official capacity liable for promulgating, and refusing to amend, a State Bar Code that violated the First Amendment. The district court also awarded fees against these defendants pursuant to § 1988. We held that absolute immunity shielded these defendants for acts taken in their legislative capacity.

8

<u>Id.</u> at 164, 105 S.Ct. at 3104 (emphasis added). Thus, nothing in <u>Graham</u> undermines the holding in <u>Consumers Union</u>. Following <u>Consumers Union</u>, we hold that the legislator defendants in the instant official capacity suit for prospective relief are entitled to absolute immunity.[6] <u>Accord</u> <u>Larsen v. Senate of Pennsylvania</u>, 152 F.3d 240, 252-54 (3d Cir. 1998) (following <u>Consumers Union</u> and holding that state senators sued for declaratory and injunctive relief in their official capacities were protected by legislative immunity).

In addition to being consistent with prior Supreme Court opinions, our

---

[6] Scott suggests that a single unexplained sentence in <u>Board of County Commissioners v. Umbehr</u>, 518 U.S. 668, 116 S. Ct. 2342 (1996), overrules the holding of <u>Consumers Union</u>. We disagree. Scott's reliance on <u>Umbehr</u> is misplaced for the same reasons that <u>Graham</u> is consistent with <u>Consumers Union</u>. After disposing of the primary issue before it – whether independent contractors with at-will contracts enjoyed the same First Amendment free speech protection against retaliation as did county employees – the Supreme Court in <u>Umbehr</u> summarily disposed of other arguments asserted by the county commissioners, including a legislative immunity argument. The Court stated that the legislative immunity claim was moot because only official capacity claims against the commissioners were before the Court. To the extent that this implies that official capacity claims are claims against the entity and legislative immunity is unavailable, it is nevertheless no help to Scott. <u>Umbehr</u> involved a § 1983 official capacity claim against local governmental officials. Accordingly, the general rule of <u>Graham</u> applied whereby the official capacity claim was to be treated as a claim against the entity and personal immunities would not be available. <u>Umbehr</u>, like <u>Graham</u>, is entirely consistent with the holding of <u>Consumers Union</u>.

For this reason, we need not address Appellants' argument that the foregoing implication in <u>Umbehr</u> has been superceded by <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 118 S. Ct. 966 (1998). It is true that <u>Bogan</u> squarely held that local legislators are entitled to the protection of absolute legislative immunity for their legislative activities. However, the Court's opinion is not clear as to whether the local legislators were sued in their official or individual capacities, and thus we cannot be sure whether there is tension between <u>Bogan</u> and the one-sentence inference in <u>Umbehr</u>. In any event, we are not concerned in this case with local legislators, and therefore we leave to another day issues relating to scope and breadth of their legislative immunity.

holding is consistent with the purposes of legislative immunity. The Supreme Court has noted that legislative immunity "would be of little value if [state legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based on a jury's speculation as to motives."[7] Tenney v. Brandhove, 341 U.S. 367, 377, 71 S. Ct. 783, 788 (1951). While Appellants would not be subjected to any judgment in this case and would not have to bear the cost of defending themselves, they would still face the not inconsiderable inconveniences and distractions of a trial. See Consumers Union, 446 U.S. at 733, 100 S. Ct. at 1975 ("'[A] private civil action, whether for an injunction or damages, creates a distraction and forces [legislators] to divert their time, energy, and attention from their legislative tasks to defend the litigation.'" (quoting Eastland v. United States Servicemen's Fund, 421 U.S. 491, 503, 95 S. Ct. 1813, 1821 (1975)). The purpose of legislative immunity being to free legislators from such worries and distractions, it makes sense to apply the doctrine regardless of the capacity in which a state legislator is sued.

---

[7] We pause here to note that Appellants' allegedly improper motives in enacting Act 401 are irrelevant with respect to determining the applicability of legislative immunity. See Ellis v. Coffee County Bd. of Registrars, 981 F.2d 1185, 1192 (11th Cir. 1993) ("[A]ny subjective motivations are irrelevant to absolute legislative immunity.").

We finally turn our attention to Scott's argument that applying legislative immunity in this case would leave her with no recourse for the alleged discrimination she suffered. This is not so. Scott is free to maintain her suit against the Board of Elections. Indeed, the Board of Elections is the only defendant in this case which has any role with respect to the relief sought by Scott, i.e., prospective relief seeking to enjoin the enforcement of the challenged voting district and a declaration as to its legality.[8] As noted above, the legislator defendants have no role in the enforcement or implementation of the voting district. Should Scott prevail, she will still be able to obtain all of the relief she seeks. See, e.g., Smith v. Cobb County Bd. of Elections and Registration, 230 F. Supp. 2d 1313, 1315 (N.D. Ga. 2002) (declaring districting plans for the Cobb County Commission unconstitutional and enjoining the county board of elections from conducting elections in accordance with them).

---

[8] One peculiarity of this case is the fact that Scott seeks no actual relief against these state legislator defendants. The relief Scott seeks pertains to the enforcement and implementation of the challenged voting district; the undisputed fact is that these legislator defendants have absolutely no role to play in that regard. Thus, it is extremely doubtful that Scott could satisfy the third prong of the standing requirements – a substantial likelihood that her injury could be redressed by a favorable decision against these legislator defendants. See United States v. Hays, 515 U.S. 737, 742-43, 115 S. Ct. 2431, 24435 (1995). However, our precedent suggests that we should not address standing in this appeal. The instant case is an interlocutory appeal of the district court's denial of legislative immunity. In an analogous context, this court in Summit Medical Associates, P.C. v. Pryor, 180 F.3d 1326 (1999), held that an interlocutory appeal based on Eleventh Amendment immunity would not support pendant appellate jurisdiction on a standing issue. Accordingly, we do not decide the standing issue.

11

## IV. CONCLUSION

Because Appellants are state legislators who acted in their legislative capacities, they are entitled to absolute legislative immunity. This is true regardless of whether a suit seeks damages or prospective relief and regardless of whether the state legislators are named in their individual or official capacity. The district court's order is therefore REVERSED in part and REMANDED with instructions to dismiss all claims against Appellants.

REVERSED and REMANDED.

JORDAN, District Judge, concurring:

I concur in the majority opinion, which holds that the doctrine of legislative immunity bars the claims of Ms. Scott against the individual state legislators. Were it not, however, for *Summitt Medical Associates, P.C. v. Pryor,* 180 F.3d 1326 (11th Cir. 1999), and *Moniz v. City of Ft. Lauderdale,* 145 F.3d 1278 (11th Cir. 1998), I would dismiss the appeal based on Ms. Scott's lack of Article III standing with respect to the legislators, and not reach the question of legislative immunity.

In *Summitt Medical,* a case involving Alabama's partial-birth abortion statue, this Court was presented with the interlocutory appeal of various Alabama officials whose Eleventh Amendment immunity defense the district court had rejected. In addition to raising the Eleventh Amendment on appeal, the officials asserted that the plaintiffs lacked standing. *Id.* at 1334. The Court, noting that an Eleventh Amendment immunity claim was appealable without a final judgment under the collateral order doctrine, explained that a denial of a motion to dismiss on justiciability grounds was not so reviewable: "We conclude that the question of standing does not fit within the collateral order doctrine, and, therefore, that [the Alabama officials] may not as of right take an immediate interlocutory appeal on this issue." *Id.* at 1334-35. The Court also held, relying on *Moniz*, 145 F.3d at

13

1283 n.1, that it would not exercise its discretion to consider the standing issue under the doctrine of pendent appellate jurisdiction. *Summitt Medical,* 180 F.3d at 1335-36.

If *Summitt Medical* and *Moniz* preclude us from addressing a threshold justiciability issue such as standing in an interlocutory appeal – and like the majority, I think they do – those cases should be reexamined by the Court sitting *en banc.* Imagine, for example, that while this case was on appeal, the Georgia legislature passed a law that somehow gave Ms. Scott the relief she sought when she filed suit. Suppose further that the parties did not advise us of this development because, for their own reasons, they wanted to obtain a definitive appellate ruling on legislative immunity. If we learned of the new legislation on our own, we would have no choice but to inquire as to mootness, at least insofar as any claims for injunctive relief were concerned. *See generally Pacific Ins. Co. v. General Dev. Corp.,* 28 F.3d 1093, 1096 (11th Cir. 1994) (an appellate court "must consider mootness sua sponte and, absent an applicable exception to the mootness doctrine, [it] must dismiss any appeal that no longer presents a viable case or controversy"). It would not matter that mootness cannot independently be the subject of an interlocutory appeal under the collateral order doctrine. *See, e.g., Brooks v. Georgia Bd. of Elections,* 59 F.3d 1114, 1118-19 (11th Cir. 1995)

14

(dismissing interlocutory appeal under 28 U.S.C. § 1292(a)(1) on mootness grounds).

Standing should be no different. Federal courts have, in the words of the Supreme Court, an "independent obligation to examine their own jurisdiction, and standing is perhaps the most import of the jurisdictional doctrines." *United States v. Hays,* 515 U.S. 737, 742, 115 S.Ct. 2431, 2435 (1995) (internal quotations omitted). A federal court may be able to choose which of various "case or controversy" concerns it will address first, *e.g., Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 831, 119 S.Ct. 2295, 2307 (1999) (taking up statutory standing before Article III standing), but it must resolve all such concerns before reaching the merits. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 66, 117 S.Ct. 1055, 1068 (1997) ("We may resolve the question whether there remains a live case or controversy with respect to Yniguez's claim without first determining whether AOE or Park has standing to appeal because the former question, like the latter, goes to the Article III jurisdiction of this Court, and the courts below, not to the merits of the case.").

Legislative immunity is an affirmative defense which can be waived or forfeited, and, unless raised, does not affect the power of a federal court to adjudicate. *See, e.g., Kingman Park Civic Ass'n v. Williams,* 348 F.3d 1033, 1039

15

(D.C. Cir. 2003) (mayor waived legislative immunity by expressly disavowing it in the district court); *Powell v. Ridge,* 247 F.3d 520, 531 (3d Cir. 2001) (Roth, J., concurring) ("legislative immunity may be waived");*Fraternal Order of Police v. City of Hobart,* 864 F.2d 551, 554 (7th Cir. 1988) (by failing to invoke legislative immunity in the district court, members of city counsel waived that defense). Indeed, sometimes legislators who are sued decide to forego legislative immunity and defend on the merits. *See, e.g., Martinez v. Bush,* 234 F.Supp.2d 1275, 1278 (S.D. Fla. 2002) (three-judge court) (Florida redistricting case). What this means is that, in deciding the question of legislative immunity, we are reaching the merits of the case. But according to Supreme Court precedent, that is not permissible. *See Steel Co. v. Citizens for Better Environment,* 527 U.S. 83, 94-95, 118 S.Ct. 1003, 1012-13 (1998) (rejecting doctrine of "hypothetical jurisdiction," under which a federal court could assume it had subject-matter jurisdiction for the purpose of deciding the merits). One might be tempted to argue that legislative immunity is one of those threshold issues that a court can nevertheless consider before addressing whether a "case or controversy" exists under Article III. *See Tenet v. Doe,* 125 S.Ct. 1230, 1235 n.4 (2005) (explaining that a federal court can choose among threshold grounds to preclude consideration of the merits). The problem with this argument is that the Supreme Court has not treated immunity as

16

one of those threshold issues. In *Calderon v. Ashmus,* 523 U.S. 740, 745, 118 S.Ct. 1694, 1697-98 (1998), a case involving a claim of Eleventh Amendment immunity by state officials, the Supreme Court ruled that it had to decide whether a "case or controversy" existed before analyzing Eleventh Amendment immunity, and ultimately dismissed the case as non-justiciable because the complaint sought an advisory declaratory judgment.

Like Eleventh Amendment immunity, legislative immunity is not "coextensive with the limitations on judicial power in Article III," *id.* at 745 n.2, 118 S.Ct at 1697 n.2, and in my view is not an alternative threshold issue that permits us to avoid the question of standing. As explained below, Ms. Scott's lack of Article III standing with respect to the legislators is dispositive.

In order to have standing, a litigant must demonstrate injury in fact (i.e., a harm that is "concrete and actual or imminent"), causation (i.e., a "fairly trace[able] connection between the alleged injury . . . and the alleged conduct of the defendant"), and redressability (i.e. a "substantial likelihood that the requested relief will remedy the alleged injury"). *Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 1861-62 (2000) (internal quotation marks rearranged). Standing, moreover, concerns the congruence or fit between the plaintiff and the defendants. "In its constitutional

17

dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant[s]* within the meaning of Art[icle] III." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975) (emphasis added). Thus, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 616-18, 93 S.Ct. 1146, 1147-49 (1973); *Okpalabi v. Foster,* 244 F.3d 405, 426-27 (5th Cir. 2001) (*en banc*). *See also id.* at 429 (Higginbotham, J., concurring) (injunction against state official is "utterly meaningless" for "all practical purposes" if the official has "no power to redress the asserted injuries"). The legislators in this case do not have enforcement authority and are not involved in conducting elections in DeKalb County. Their role is limited to making law. *See* Ga. Const., Art. III, § VI; O.C.G.A. § 28-1-1 *et seq.* An injunction running against them therefore would do nothing to help Ms. Scott. Furthermore, even an extraordinary injunction ordering the legislators to vote to repeal or amend Act 401 would be ineffective, for the legislators, by themselves, are powerless to pass laws.[9] Ms. Scott therefore cannot satisfy the redressability prong of Article III

---

[9]   I do not mean to suggest that such an directive could be legally issued, and merely use the example to explain why Ms. Scott lacks standing.

standing with respect to the legislators, and we should dismiss her claims against them on that ground.

Because of *Summitt Medical* and *Moniz,* we have essentially issued an advisory opinion on legislative immunity.[10]  A panel should not, however, have the discretion to bypass a core "case or controversy" requirement like Article III standing just because the appeal is interlocutory in nature.  "Without jurisdiction, the court cannot proceed at all in any case.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining for the court is that of announcing that fact and dismissing the case." *Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 204 (1868).  Like other circuits, this Court should ensure that there is Article III standing before resolving issues of Eleventh Amendment, sovereign, absolute, or qualified immunity in interlocutory appeals. *See, e.g., Webb v. City of Dallas,* 314 F.3d 787, 790-91 (5th Cir. 2002); *Price v. Akaka,* 3 F.3d 1220, 1223-24 (9th Cir. 1993).

---

[10]
In the Eleventh Circuit, a panel is bound by a prior decision unless there is an intervening Supreme Court decision overruling it or conflicting with it.  *See, e.g., In re Provenzano,* 215 F.3d 1233, 1234 (11th Cir. 2000).  The Supreme Court decisions in *Arizonans for Official English,  Ashmus, Citizens for Better Environment,* and *Ortiz* predate *Summitt Medical*.  As a result, *Summitt Medical* is binding.