[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 20, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12635
Non-Argument Calendar

_____

D. C. Docket No. 04-01904-CV-T-23-MAP

BARBARA ORBAN,

Plaintiff-Appellant,

versus

CITY OF TAMPA, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(February 20, 2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Dr. Barbara Orban appeals the district court's grant of summary judgment in

favor of the City of Tampa on her malicious prosecution claims, and she also

appeals the district court's dismissal, for lack of standing, of her claim that the City violated her right to due process. We review a district court's grant or denial of summary judgment de novo. Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Holloman, 443 F.3d at 836. We also review dismissals for lack of standing de novo. Scott v. Taylor, 470 F.3d 1014, 1017 (11th Cir. 2006).

## I. BACKGROUND

On March 27, 2000, Dr. Orban was involved in a minor traffic accident when her car struck the rear of another vehicle, which was stopped in traffic. Dr. Orban describes the accident as unavoidable, explaining that she was only able to see the stopped traffic after an SUV, behind which she was traveling, abruptly turned off the street.[1] By the time she saw the traffic jam, it was too late for her brakes to adequately engage the pavement, which was wet with rain. As a result of the collision, both Dr. Orban's car and the car it struck sustained minor damage,

---

[1] Dr. Orban's claim of the SUV's existence and her description of its behavior is uncorroborated.

so Dr. Orban called the police to report the accident and request assistance. Two Tampa Police Department ("TPD") officers responded to the scene. These officers had been trained to issue a citation to the at-fault driver whenever damage accompanies an accident unless a supervisor agrees that a citation would be inappropriate under the circumstances. Accordingly, the officers investigated the collision, determined that Dr. Orban was at fault, and issued Dr. Orban a citation for careless driving in violation of section 316.1925 of the Florida Statutes.[2] In addition, the officers drafted short- and long-form accident reports. The officers gave copies of the citation and the short-form report to Dr. Orban, but Dr. Orban was unaware that the long-form report existed.

Dr. Orban contested the citation, but the traffic court judge found Dr. Orban guilty of careless driving. In reaching his decision, the traffic court judge allegedly relied on the officers' long-form report, which contained inadmissible hearsay and several errors. After discovering the existence of the long-form report

---

[2]In pertinent part, section 316.1925 defines "careless driving" as follows:

(1) Any person operating a vehicle upon the streets or highways within the state shall drive the same in a careful and prudent manner, having regard for the width, grade, curves, corners, traffic, and all other attendant circumstances, so as not to endanger the life, limb, or property of any person. Failure to drive in such manner shall constitute careless driving and a violation of this section.

Fla. Stat. Ann. § 316.1925 (West 2000).

and the mistakes therein, Dr. Orban appealed her conviction. Subsequently, her case was re-opened, and the citation was ultimately dismissed. Dr. Orban then filed the instant suit in federal court against the City of Tampa under 42 U.S.C. § 1983, alleging, inter alia, two counts of malicious prosecution and one count of a violation of her right to due process. Specifically, Dr. Orban argues that the City maliciously prosecuted her when TPD officers, following an established policy, issued her a citation without probable cause. Dr. Orban further argues that the City violated her due process rights by maintaining an illegal scheme to issue traffic citations without probable cause and then enforce them through the ex parte submission of traffic reports that contain hearsay and false information.

## II. DISCUSSION

A. Malicious Prosecution Claims

We agree with the district court that TPD officers had probable cause to issue Dr. Orban a citation and that the existence of probable cause provides a complete defense to Dr. Orban's claims of malicious prosecution. "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation [of a federally protected right]." Kingsland v. City of Miami, 382 F.3d 1220, 1234

4

(11th Cir. 2004). The common law tort of malicious prosecution includes the following six elements under Florida law:

(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Id.

After carefully reviewing the record and the parties' briefs, we conclude that Dr. Orban has failed to establish the fourth element of a claim for malicious prosecution because TPD officers had probable cause to issue her a citation for careless driving.[3] Probable cause "exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310-11 (1949) (internal quotation marks omitted). The undisputed evidence shows that TPD officers investigated

---

[3]We express no opinion about whether Dr. Orban has established the violation of a federally protected right or whether she has satisfied any other elements of a common law malicious prosecution claim.

5

the accident scene for forty-five minutes, interviewed both drivers, and ultimately concluded that Dr. Orban was at fault and guilty of careless driving because she failed to observe the stopped traffic in time to avoid a collision. Even assuming Dr. Orban failed to timely spot the stopped traffic because a leading SUV abruptly turned off the street, Dr. Orban still should have maintained adequate stopping distance in front of her car to avoid any obstacles in the roadway. The undisputed facts provide a sufficient basis to determine as a matter of law that officers had probable cause to conclude that Dr. Orban failed to drive in a careful and prudent manner under the circumstances. Accordingly, we affirm the district court's grant of summary judgment in favor of the City of Tampa on Dr. Orban's malicious prosecution claims.

B. Due Process Violation Claim

Regarding Dr. Orban's claim that the City violated her due process rights, we agree with the district court that Dr. Orban lacks standing to pursue a generalized claim against the City of Tampa for the City's allegedly utilizing an illegal scheme to issue and enforce traffic citations. Article III of the Constitution requires plaintiffs to have "an actual case or controversy" before they may invoke the jurisdiction of the federal courts. City of L.A. v. Lyons, 461 U.S. 95, 101, 103 S. Ct. 1660, 1665 (1983). To satisfy this requirement,

6

[p]laintiffs must demonstrate a personal stake in the outcome in order to assure that concrete adverseness sharpens the presentation of issues necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he has sustained or is immediately in danger or sustaining some direct injury as the result of the challenged official conduct and the injury or threat must be both real and immediate, not conjectural or hypothetical.

Id. (internal citations and quotation marks omitted).

To the extent Dr. Orban requests retrospective relief for the City's alleged scheme, she has not sufficiently demonstrated that she personally suffered a violation of her constitutional rights. Notwithstanding any alleged policy on the part of the City, the TPD officers who issued Dr. Orban's citation possessed probable cause, as discussed above. Furthermore, although Dr. Orban alleges that the traffic court convicted her on the strength of inadmissible evidence in the form of the TPD officers' ex parte submission of a long-form accident report, which included hearsay and false information, any such error on the part of the traffic court can be remedied, and in fact was remedied, on direct appeal of the judge's decision.

To the extent Dr. Orban requests prospective relief against the City's alleged illegal scheme, she lacks standing because even if she had established a violation of her constitutional rights, she nevertheless failed to demonstrate a sufficient likelihood that she will be wronged again in a similar way. Federal

7

courts may not grant prospective relief against state officers solely on the basis of a speculative claim of future injury. Lyons, 461 U.S. at 111, 103 S. Ct. at 1670. "[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." Id. at 103, 103 S. Ct. at 1666. Thus, although the plaintiff in Lyons had been subjected to an illegal chokehold, he lacked standing to enjoin the Los Angeles police from similar action in the future. Id. at 111-13, 103 S. Ct. at 1669-71. As the Lyons Court explained:

> Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional.

Id. at 111, 103 S. Ct. 1670.

Dr. Orban's assertion that in the future she *may* be issued a ticket without probable cause does not create an actual case or controversy. Even as alleged by Dr. Orban, TPD's policy does not mandate that TPD officers issue a citation *whenever* they respond to an accident; rather, TPD officers may seek a supervisor's approval to forego issuing a citation if a citation would be inappropriate under the circumstances. Thus, even assuming Dr. Orban will have another accident, and assuming TPD officers will respond to the scene, it remains uncertain that Dr. Orban would receive a citation if probable cause is lacking. Dr.

8

Orban is no more entitled to prospective relief than any other citizen of Tampa, and her undifferentiated, speculative claim cannot sustain federal jurisdiction. The district court thus properly dismissed Dr. Orban's due process claim for lack of standing.

Accordingly, the district court is **AFFIRMED**.[4]

---

[4]Dr. Orban's request for oral argument is **DENIED**.