[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13298

_____

WILLIE B. SMITH, III,

Plaintiff-Appellant,

*versus*

COMMISSIONER, ALABAMA DEPARTMENT OF
CORRECTIONS,
WARDEN, HOLMAN CORRECTIONAL FACILITY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:19-cv-00927-ECM-SMD

_____

Before WILSON, JORDAN, and JILL PRYOR, Circuit Judges.

WILSON, Circuit Judge:

Willie B. Smith III is an Alabama death row inmate. He appeals the district court's sua sponte dismissal of his claim under the Americans with Disabilities Act (ADA) regarding the statutory election of his method of execution for lack of Article III standing.

Smith contends that he pleaded the facts necessary to support standing and that the district court erroneously considered the merits of the case in its sua sponte ruling. The Commissioner of the Alabama Department of Corrections (ADOC), Jefferson Dunn, and the Warden of Holman Correctional Facility, Terry Raybon, (collectively, Defendants) argue that the district court correctly concluded that Smith did not have standing because he failed to show he would have elected nitrogen hypoxia as his method of execution during June 2018, among other reasons.

Upon review, and with the benefit of oral argument, we conclude that the district court erred because Smith sufficiently alleged standing in his complaint. Accordingly, we vacate the district court's sua sponte dismissal and remand for the consideration of the preliminary injunction motion on the merits.

I.

Smith is presently incarcerated at Holman Correctional Facility (Holman) and is scheduled to be executed by the State of Alabama via lethal injection on October 21, 2021. On June 1, 2018, Senate Bill 272, which authorized Alabama's usage of nitrogen hypoxia for the purposes of execution, went into effect. The statute provided inmates subject to the death penalty with the option to elect execution by nitrogen hypoxia in lieu of the default method of execution—lethal injection. Eligible inmates had a statutory period of 30 days (from June 1, 2018) to elect nitrogen hypoxia as their method of execution; otherwise the election was considered waived.

At some point between June 26, 2018 and the statutory deadline, the ADOC adopted, for its own use and distribution, an election form created by the Federal Defenders. The former Warden for Holman, Cynthia Stewart, acting under the "direction of someone above her at the ADOC," ordered the distribution of the election form to all death row inmates with instructions to sign, date, and return the form if they wished to be executed by nitrogen hypoxia.

Smith received the form, but he did not make the election during the opt-in period. Because Smith suffers from "significant cognitive deficiencies," he alleges he was unable to "enjoy the benefit of the statute and the election form" without being aided with comprehension of the form and its contents. Neither Holman nor

the ADOC provided an accommodation to Smith to help him to understand the form during the statutory opt-in period.

On November 25, 2019, Smith filed a complaint alleging the violation of his rights under the ADA with respect to the enforcement and implementation of the statute.  In his complaint, Smith notably argues that, because of Defendants' alleged ADA violations, he has been foreclosed from having the meaningful opportunity to make the choice to which he was entitled under statute. The district court issued a scheduling order and began discovery soon after.

On July 14, 2021, Smith filed a motion for preliminary injunction to enjoin his execution by any method aside from nitrogen hypoxia until his ADA claim was resolved.  The district court ordered an evidentiary hearing and oral argument on the motion but struck the submissions and rescheduled the hearing following the close of briefing.  The district court then ordered supplemental briefing from the parties with instructions to address jurisdiction, specifically: "whether the Plaintiff has standing, whether the injury alleged by the Plaintiff is redressable in this litigation, and/or whether this case is moot in light of the fact that the statutory period of election has closed."

The district court heard the parties' arguments and made a determination—despite Defendants' concessions on the point— finding that Smith failed to establish all three elements of Article III standing.  Consequently, the district court dismissed Smith's ADA

21-13298                Opinion of the Court                5

suit for lack of Article III standing, and, therefore, jurisdiction.  This appeal followed.

## II.

This Court reviews de novo a district court's dismissal of a case for lack of standing.  *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021); *see also Burdick v. Kennedy*, 700 F. App'x 984, 986 (11th Cir. 2017) (per curiam) (providing this court reviews a sua sponte dismissal for lack of standing de novo) (citing *Scott v. Taylor*, 470 F.3d 1014, 1017 (11th Cir. 2006) (per curiam)). We review a district court's legal conclusions, including those concerning subject-matter jurisdiction, under the same standard.  *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).  At the dismissal stage of litigation, the court reviewing standing may not make determinations on the merits and must assume that the plaintiff will succeed on his claims.  *Culverhouse v. Paulson & Co.*, 813 F.3d 991, 994 (11th Cir. 2016) (citations omitted).

## III.

Smith argues on appeal that the district court erred in dismissing his ADA claim for lack of Article III standing because he sufficiently alleged the requisite elements of standing in his amended complaint.  After review and with the benefit of oral

6                    Opinion of the Court                    21-13298

argument, we conclude that the district court erred because Smith sufficiently alleged standing in his pleadings.[1]

To establish Article III standing, a plaintiff must show: (1) injury in fact; (2) causation; and (3) redressability. *Sierra*, 996 F.3d at 1112 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The party invoking federal jurisdiction bears the burden of establishing these indispensable elements. *Lujan*, 504 U.S. at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

At the pleading stage, for instance, general factual allegations of injury resulting from the defendant's conduct may suffice to establish standing. *Id.* Additionally, when assessing a motion to dismiss, "we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal quotation marks omitted and alteration adopted). This presumption applies whether the court dismisses a plaintiff's case following a motion to dismiss from the defendant or from the court itself. *See Scott,* 470 F.3d at 1017.

---

[1] In addition to the pleadings, we accept as true the facts contained in discovery materials and the record for the purposes of the standing issue. *See, e.g., Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 109 n.22 (1979).

In concluding that Smith lacks Article III standing, the district court erroneously conflated the assessment of standing with the merits of Smith's claim. When addressing the issue of standing, the court must assume that the plaintiff will win on the complaint without reaching the merits of the underlying claim in question. *Culverhouse*, 813 F.3d at 994. To be sure, district courts have an independent obligation to confirm jurisdiction, even in the absence of a challenge by the defendant. *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015). Nevertheless, we have explained that "when reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiff[] would be successful in [his] claim[]." *Culverhouse*, 813 F.3d at 994. Smith has standing to bring his claim under the ADA because he adequately alleged (1) an injury in fact, (2) traceability (or causation), and (3) redressability. We address each element in turn.

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted).

An injury is particularized when it "affect[s] the plaintiff in a personal and individual way." *Sierra*, 996 F.3d 1110 at 1113. To be concrete, the injury must be "real, and not abstract." *Id.* In the

context of a preliminary injunction, a plaintiff must adequately demonstrate "that a future injury is imminent." *Id.* This entails a showing "that there is a sufficient likelihood that the plaintiff will be affected by the allegedly unlawful conduct in the future." *Id.* Here, the injury Smith alleged is the violation of his rights under the ADA. This injury then resulted in the future harm of his scheduled execution by lethal injection, a death which Smith contends is more painful than nitrogen hypoxia.

Smith alleges that the ADOC failed to provide him a reasonable accommodation to allow him to meaningfully understand the form and the choice it provided regarding execution method. Smith proffers that such reasonable accommodations may have included, but are not limited to, the use of simple language or a comprehension check, additional time, or assistive technology. As provided in the complaint, Smith alleges that the denial of such reasonable accommodation violates the ADA. That violation, in turn, allegedly barred Smith from the benefit of electing a less painful method of execution: nitrogen hypoxia. Smith thus sufficiently alleges an injury in fact.

Because we find that Smith has demonstrated that he has suffered an injury in fact, our standing analysis proceeds to the traceability (or causation) element. Traceability requires Smith to show that his injury (the impending execution by lethal injection) is "fairly traceable to the challenged action" (*i.e.*, the failure of

21-13298                Opinion of the Court                9

Defendants to offer him a reasonable accommodation as required by the ADA). *See Lujan*, 504 U.S. at 560 (alterations adopted).

The district court ruled that Smith failed to demonstrate traceability because Defendants did not cause the alleged injury. The district court reasoned that the election form was not the only method by which Smith could exercise his statutory right to elect to be put to death by nitrogen hypoxia and that it was defense counsel who was responsible for informing Smith about the change in law. But by focusing on what Smith could have done differently, and what Alabama law required or allowed, the district court again conflated the merits with standing. In the process, the district court failed to recognize that a plaintiff need not "demonstrate a connection between the injur[y] [he] claim[s] and the . . . rights being asserted." *See Duke Power Co. v. Carolina Env't Study Grp.,* 438 U.S. 59, 78 (1978) (rejecting the argument that injuries that do not "directly relate[] to the constitutional attack" cannot "supply a predicate for standing").

Smith alleges in his complaint that Defendants were responsible for developing, implementing, and distributing the election form without providing an accommodation for his disability.[2]

---

[2] In their answer, Defendants admitted the allegation in Smith's complaint that stated: "Jefferson Dunn, Commissioner of the Alabama Department of Corrections ("ADOC"), is responsible for the development and implementation of the protocol and procedures governing the execution of death-sentenced prisoners in the State of Alabama." Doc. 36 at ¶ 7; Doc 58 at ¶ 7. Further, Smith

Moreover, Defendants' amended answer and record testimony include concessions regarding the scope of their roles in connection to Smith's alleged ADA violation.  In ruling that Defendants had no duty to inform Smith about the opt-in period, the district court improperly addressed the merits of the ADA claim.  Instead, if we assume—as we must—that Smith will succeed on his ADA claim, he has sufficiently alleged that his injury is traceable to, or caused by, the challenged actions or inactions of Defendants.

Having established that Smith has shown the first two elements needed to meet "the irreducible constitutional minimum of standing," we proceed to the third and final element: redressability. *Lujan*, 504 U.S. at 560 (1992).  Redressability simply requires a plaintiff to seek a "remedy that is likely to redress [the] injury" which is fairly traceable to the challenged conduct. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 797 (2021).  Smith successfully alleges redressability for his claimed injury by Defendants under the ADA.

Smith requests that Defendants redress his injury by reopening the 30-day statutory opt-in period to allow him an opportunity to understand and complete the form with the benefit of the accommodations he was previously denied.  Defendants counter

---

alleges that Warden Stewart oversaw the distribution of the election forms at Holman.  The statute also explicitly provides that the inmates should deliver their completed election forms to the warden of the inmate's correctional facility.

that the statute does not grant them this power.[3]  But the ability of a federal court to fashion effective relief for a violation of federal law is not limited by what state law permits.  *See Guaranty Trust Co. v. York*, 326 U.S. 99, 106 (1945) ("A federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it.").

We find that "a favorable decision" from the court in this case "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1303–04 (11th Cir. 2011).  Because this is all that is required to show redressability, Smith has satisfied this element.

IV.

After a thorough review of the record, we find sufficient factual allegations in Smith's pleadings to establish standing.  The district court erred in dismissing Smith's action on the basis that he lacks standing by analyzing the merits of Smith's ADA claim at this point in litigation.

---

[3] This runs contrary to Defendants' earlier concession to Smith's allegation in his Amended Complaint that "Commissioner Dunn had the authority to alter, amend, or make exceptions to the protocol and procedures governing the execution of death-sentenced prisoners in the State of Alabama."

12                Opinion of the Court                21-13298

    We vacate and remand to the district court to make an adjudication regarding the preliminary injunction motion on the merits.